IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTHUR MAHONE,

        Petitioner,               No. 2:10-cv-3273-WBS-JFM (HC)

     vs.

GARY SWARTHOUT, et al.,

        Respondent.          <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner claims that his federal constitutional right to due process was violated by a 2009 decision of the California Board of Parole Hearings ("the Board") to deny him a parole date and that the Board violated the ex post facto clause by retroactively applying California's Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which amended Cal. Pen. Code § 3041.5(b)(3) in 2008 after petitioner had committed his commitment offense.

FACTUAL AND PROCEDURAL BACKGROUND

        In 1979, petitioner was convicted of second-degree murder and was sentenced to a term of fifteen years to life with the possibility of parole.  <u>See</u> Pet., Ex. A.  On October 29, 2009, petitioner appeared before the Board for a parole consideration hearing.  <u>See</u> Ans., Ex. N. Petitioner appeared at and participated in the hearing.  <u>See</u> <u>id.</u> at 1.  Following deliberations held

1

1  at the conclusion of the hearing, the Board announced their decision to deny petitioner parole

2  and the reasons for that decision.  Id. at 77.

3  On March 8, 2010, petitioner filed a petition for writ of habeas corpus in the Los

4  Angeles County Superior Court.  See Pet., Ex. A. On April 26, 2010, the petition was denied.  Id.

5  On May 27, 2010, petitioner filed a petition for writ of habeas corpus in the

6  California Court of Appeal, Second Appellate District.  See Pet., Ex. B.  On July 21, 2010, the

7  petition was denied.  Id.

8  On August 16, 2010, petitioner filed a petition for writ of habeas corpus in the

9  California Supreme Court.  Pet., Ex. C.  On October 13, 2010, the petition was summarily

10  denied.  Id.

11  This action commenced on December 7, 2010.  Respondent filed an answer on

12  February 18, 2011.  Petitioner filed a traverse on March 8, 2011.

13  ANALYSIS

14  I.  Standards for a Writ of Habeas Corpus

15  Federal habeas corpus relief is not available for any claim decided on the merits

16  in state court proceedings unless the state court's adjudication of the claim:

17  (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as
18  determined by the Supreme Court of the United States; or

19  (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
20  State court proceeding.

21  28 U.S.C. § 2254(d).

22  Under section 2254(d)(1), a state court decision is "contrary to" clearly

23  established United States Supreme Court precedents if it applies a rule that contradicts the

24  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

25  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at a different

26  /////

2

1   result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

2   (2000)).

3            Under the  "unreasonable application" clause of section 2254(d)(1), a federal

4   habeas court may grant the writ if the state court identifies the correct governing legal principle

5   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

6   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

7   simply because that court concludes in its independent judgment that the relevant state-court

8   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

9   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

10  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

11  question, is left with a 'firm conviction' that the state court was 'erroneous.'").

12           The court looks to the last reasoned state court decision as the basis for the state

13  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

14  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

15  habeas court independently reviews the record to determine whether habeas corpus relief is

16  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

17  II.  Petitioner's Claim

18       A.    Due Process Violation

19           As noted above, petitioner claims that the denial of parole violated his federal

20  constitutional right to due process of law.  The Due Process Clause of the Fourteenth

21  Amendment prohibits state action that deprives a person of life, liberty, or property without due

22  process of law.  A litigant alleging a due process violation must first demonstrate that he was

23  deprived of a liberty or property interest protected by the Due Process Clause and then show that

24  the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky

25  Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

26  /////

1    A protected liberty interest may arise from either the Due Process Clause of the

2  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

3  expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

4  221 (2005) (citations omitted).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

5  The United States Constitution does not, of its own force, create a protected liberty interest in a

6  parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981);

7  Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or

8  inherent right of a convicted person to be conditionally released before the expiration of a valid

9  sentence.").  However, "a state's statutory scheme, if it uses mandatory language, 'creates a

10  presumption that parole release will be granted' when or unless certain designated findings are

11  made, and thereby gives rise to a constitutional liberty interest."  Greenholtz, 442 U.S. at 12.

12  See also Allen, 482 U.S. at 376-78.

13    California's parole statutes give rise to a liberty interest in parole protected by the

14  federal due process clause.  Swarthout v. Cooke, 562 U.S. ___ (2011), No. 10-333, 2011 WL

15  197627, at *2 (Jan. 24, 2011).  In California, a prisoner is entitled to release on parole unless

16  there is "some evidence" of his or her current dangerousness.  In re Lawrence, 44 Cal.4th 1181,

17  1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).  However, in

18  Swarthout the United States Supreme Court held that "[n]o opinion of [theirs] supports

19  converting California's 'some evidence' rule into a substantive federal requirement."  Swarthout,

20  2011 WL 197627, at *3.  Rather, the protection afforded by the federal due process clause to

21  California parole decisions consists solely of  the "minimal" procedural requirements set forth in

22  Greenholtz, specifically "an opportunity to be heard and . . . a statement of the reasons why

23  parole was denied."  Id. at *2-3.

24    Here, the record reflects that petitioner was present at the 2009 parole hearing,

25  that he participated in the hearing, and that he was provided with the reasons for the Board's

26  decision to deny parole.  According to the United States Supreme Court, the federal due process

4

1    clause requires no more.  Accordingly, petitioner's application for a writ of habeas corpus should

2    be denied on that ground.

3              B.    Ex Post Facto Violation

4              Petitioner also contends that the Board's application of the recently enacted

5    "Marsy's Law" (adopted by the voters pursuant to Proposition 9, the "Victims' Bill of Rights

6    Act of 2008: Marsy's Law"), to delay for seven years his next parole hearing, violated the Ex

7    Post Facto Clause of the United States Constitution.  Under the statute as it existed prior to the

8    enactment of "Marsy's Law," indeterminately-sentenced inmates, like petitioner, were denied

9    parole for one year unless the Board found, with stated reasons, that it was unreasonable to

10   expect that parole could be granted the following year, in which case the subsequent hearing

11   could be extended up to five years.  Cal. Penal Code § 3041.5(b)(2) (2008).  At the 2009 parole

12   hearing, petitioner was subject to the terms of the amended statute, which authorizes denial of a

13   subsequent parole hearing for a period up to fifteen years.  Cal. Penal Code § 3041.5(b)(3)

14   (2010).  The shortest interval that the Board may set is three years, based on a finding that the

15   prisoner "does not require a more lengthy period of incarceration . . . than seven additional

16   years."  Id.,§ 3041.5(b)(3)(C).

17             The Constitution provides that "No State shall . . . pass any . . . ex post facto

18   Law."  U.S. Const. art. I, § 10.  A law violates the Ex Post Facto Clause if it:  (1) punishes as

19   criminal an act that was not criminal when it was committed; (2) makes a crime's punishment

20   greater than when the crime was committed; or (3) deprives a person of a defense available at the

21   time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52 (1990).  The Ex Post

22   Facto Clause is also violated if:  (1) state regulations have been applied retroactively to a

23   defendant; and (2) the new regulations have created a "sufficient risk" of increasing the

24   punishment attached to the defendant's crimes.  Himes v. Thompson, 336 F. 3d 848, 854 (9th

25   Cir. 2003).  Not every law that disadvantages a defendant is a prohibited ex post facto law.  In

26   order to violate the Clause, the law must essentially alter "the definition of criminal conduct" or

5

1   increase the "punishment for the crime."  Lynce v. Mathis, 519 U.S. 433, 441-42 (1997); Souch

2   v. Schaivo, 289 F. 3d 616, 620 (9th Cir. 2002).

3          California Penal Code section 3041.5 has been amended several times since the

4   date of petitioner's conviction to allow for longer periods of time between parole suitability

5   hearings.  Ex post facto challenges to those amendments have all been rejected.  See e.g.

6   California Department of Corrections v. Morales, 514 U.S. 499, 509 (1995) (1981 amendment to

7   Section 3041.5, which increased maximum deferral period of parole suitability hearings to five

8   years did not violate the Ex Post Facto Clause because it simply altered the method of setting a

9   parole release date and did not create a meaningful "risk of increasing the measure of

10  punishment attached to the covered crimes"); Watson v. Estelle, 886 F. 2d 1093, 1097-98 (9th

11  Cir. 1989) (not a violation of the Ex Post Facto Clause to apply Section 3041.5(b)(2)(A) to

12  prisoners sentenced to life imprisonment prior to the 1977 implementation of California's

13  Determinate Sentence Law); Clifton v. Attorney General Of the state of California, 997 F. 2d

14  660, 662 n.1 (9th Cir. 1993) (same); see also Garner v. Jones, 529 U.S. 244, 249 (2000)

15  (upholding Georgia's change in the frequency of parole hearings for prisoners serving life

16  sentences, from three to eight years).

17         Recently the Ninth Circuit overturned a district court decision granting

18  preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from

19  enforcing the amended deferral periods established by Marsy's Law.  Gilman v.

20  Schwarzenegger, ___F.3d___, 2011 WL 198435 (9th Cir., Jan. 24, 2011).  The court found it

21  unlikely that plaintiffs would succeed on the merits of their underlying challenge premised on

22  the Ex Post Facto Clause.  The court initially compared and contrasted Marsy's Law with

23  existing Supreme Court precedent:

24             Here, as in Morales and Garner, Proposition 9 did not increase the
              statutory punishment for any particular offense, did not change the date of
25            inmates' initial parole hearings, and did not change the standard by which the
              Board determined whether inmates were suitable for parole.  However, the
26            changes to the frequency of parole hearings here are more extensive than the

6

> change in either <u>Morales</u> or <u>Garner</u>.  First, Proposition 9 increased the maximum
> deferral period from five years to fifteen years.  This change is similar to the
> change in <u>Morales</u> (i.e., tripled from one year to three years) and the change in
> <u>Garner</u> (i.e., from three years to eight years).  Second, Proposition 9 increased the
> minimum deferral period from one year to three years.  Third, Proposition 9
> changed the default deferral period from one year to fifteen years.  Fourth,
> Proposition 9 altered the burden to impose a deferral period other than the default
> period. . . . Neither <u>Morales</u> nor <u>Garner</u> involved a change to the minimum
> deferral period, the default deferral period, or the burden to impose a deferral
> period other than the default period.

<u>Gilman</u>, 2011 WL 198435, at *5.  The Ninth Circuit found these distinctions insignificant due to

the availability of advance parole hearings at the Board's discretion (sua sponte or upon the

request of a prisoner, the denial of which is subject to judicial review), reasoning that, "as in

<u>Morales</u> , an advance hearing by the Board 'would remove any possibility of harm' to prisoners

because they would not be required to wait a minimum of three years for a hearing."  <u>Id.</u> at *6,

quoting <u>Morales</u>, 514 U.S. at 513.  The court concluded that plaintiffs had failed to demonstrate

a significant risk that their incarceration would be prolonged by application of Marsy's Law, and

thus found that plaintiffs had not established a likelihood of success on the merits of their ex post

facto claim.

    In addition to these preliminary conclusions by the Ninth Circuit that Marsy's

Law does not appear to violate the Ex Post Facto Clause, at least one district court has dismissed

a petitioner's challenge to the law on the ground that it improperly duplicates the class action

claim still pending on the merits in <u>Gilman</u>.  <u>See</u> e.g. <u>Bryant v. Haviland</u>, 2011 WL 23064, *2-5,

15 (E.D. Cal., Jan. 4, 2011).  That court noted that petitioner therein, as here, appears to be a

member of the <u>Gilman</u> class "of prisoners convicted of murder and serving a sentence of life

with the possibility of parole with at least one parole denial . . . challeng[ing] the state

procedures denying class members parole as well as their deferred parole suitability hearings

following a finding of parole unsuitability."  <u>Id.</u> at *5.  Relying on established precedent

precluding a member of a class action from seeking, in an individual action, equitable relief that

/////

1    is also sought by the class, see e.g. Crawford v. Bell, 599 F. 2d 8990, 892-93 (9th Cir. 1979), the

2    court dismissed petitioner's claim.

3            In light of these cases, the court finds that petitioner is not entitled to relief in this

4    action on his federal ex post facto claim.

5            Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United

6    States District Courts, "[t]he district court must issue or a deny a certificate of appealability

7    when it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2254.  A

8    certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a

9    substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court

10   must either issue a certificate of appealability indicating which issues satisfy the required

11   showing or must state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).

12   For the reasons set forth in these findings and recommendations, petitioner has not made a

13   substantial showing of the denial of a constitutional right.  Accordingly, no certificate of

14   appealability should issue.            Accordingly, IT IS HEREBY RECOMMENDED that:

15            1.  Petitioner's petition for writ of habeas corpus be denied; and

16            2.  The District Court decline to issue a certificate of appealability.

17            These findings and recommendations are submitted to the United States District

18   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

19   days after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22   objections shall be filed and served within fourteen days after service of the objections.  The

23   /////

24   /////

25   /////

26   /////

1  parties are advised that failure to file objections within the specified time may waive the right to

2  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: August 24, 2011.

4

5                                              UNITED STATES MAGISTRATE JUDGE

6

7  /014;maho3273.157

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26